UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTHEL DENNIS BORING, an individual,<br><br>       Plaintiff,<br><br>   v.<br><br>NATIONSTAR MORTGAGE,LLC, a limited liability company; BANK OF AMERICA, N.A., a national business association; and DOES 1-50, inclusive,<br><br>       Defendants. | No.  2:13-cv-01404-GEB-CMK<br><br>**ORDER GRANTING IN PART AND DENYING IN PART NATIONSTAR'S MOTION TO DISMISS; GRANTING IN PART AND DENYING IN PART BANK OF AMERICA'S MOTION TO DISMISS** |

      Defendants Nationstar Mortgage, LLC ("Nationstar") and Bank of America, N.A., ("BANA") move separately under Federal Rule of Civil Procedure ("Rule") 12(b)(6) for dismissal of claims in Plaintiff's Second Amended Complaint ("SAC"). The SAC consists of state claims alleged against Nationstar under: California Civil Code sections 2924(a), 2923.7, and 2923.6; and claims against all Defendants for violations of the implied covenant of good faith and fair dealing and California Unfair Competition Law ("UCL").

### I.   JUDICIAL NOTICE

      Nationstar submits a request for judicial notice in support of its dismissal motion. (Request for Judicial Notice

1

("RJN"), ECF No. 58.) Nationstar seeks judicial notice of the following documents recorded in the Butte County Recorder's Office: (1) the Deed of Trust recorded on October 30, 2007; (2) the Corporate Assignment of Deed of Trust recorded on December 19, 2012; (3) the Substitution of Trustee recorded on January 15, 2013; (4) the Notice of Default and Election to Sell Under Deed of Trust recorded on March 5, 2013; and (5) the Notice of Trustee's Sale recorded on May 31, 2013. (RJN 1:23-2:9.)

Courts "may. . . take judicial notice of 'matters of public record." United States v. Corinthian Colls., 655 F.3d 984, 998-99 (9th Cir. 2011) (citations omitted); see also Fed. R. Evid. 201(b)(2). Since the referenced documents are matters of public record, the judicial notice request is granted.

## II. FACTUAL ALLEGATIONS AND JUDICIALLY NOTICED MATTERS

Each dismissal motion concerns the following allegations in the SAC and judicially noticed information.[1] "Plaintiff refinanced [a] loan agreement for his property with Countrywide Bank FSB" in October 2007 and "BANK OF AMERICA . . . acquired Plaintiff's loan[] in late 2008." (SAC ¶ 11; RJN Ex. A, ECF No. 58-1.)

"[B]eginning in 2010," Plaintiff "began to apply for a loan modification because his Bank of America representative told him that he was eligible." (Id. ¶ 12.) Plaintiff "submit[ted] a

---

[1] BANA argues some allegations in Plaintiff's First Amended Complaint "remain[] controlling" to the extent that they are inconsistent with allegations in the SAC. (BANA Mot. 5:5-7, ECF No. 59.) However, "[t]here is nothing in the Federal Rules of Civil Procedure to prevent a party from filing successive pleadings that make inconsistent or even contradictory allegations" "[u]nless there is a showing that the party acted in bad faith," a showing BANA has not made. PAE Gov't Servs., Inc. v. MPRI, Inc., 514 F.3d 856, 858 (9th Cir. 2007).

2

complete application," but "Defendant BANK OF AMERICA interfered with Plaintiff's ability to submit a complete application, as it constantly demanded updated information or duplicate information." (Id.) "[I]n April 2011, Defendant BANK OF AMERICA informed Plaintiff . . . the reason [his loan] was not being modified was because he was not delinquent in his mortgage payments." (Id.) "Plaintiff was told that in order to obtain a modification it was absolutely necessary for [him] to stop making payments on his loan" and that "he would not face foreclosure or other negative consequences for missing payments in pursuit of a loan modification." (Id.) "[I]n reliance on these representations, Plaintiff began missing payments" "pursuant to Defendant BANK OF AMERICA's instructions" and "submitted yet another loan modification application." (Id. ¶¶ 12-13.)

"[I]n November 2011 . . . Plaintiff learned that Defendant NATIONSTAR had obtained his mortgage" and when "NATIONSTAR informed Plaintiff that he was delinquent . . . , which resulted from Plaintiff's compliance with Defendant BANK OF AMERICA'S instructions. . . . Plaintiff submitted a payment. . . which left [him] approximately a month late in his mortgage payments." (SAC ¶ 14; RJN Ex. B, ECF No. 58-2.) "Plaintiff began submitting his regular monthly mortgage payment to Defendant NATIONSTAR. . . and continued pursuing a loan modification with NATIONSTAR, through his customer service manager Amber Orebaugh." (SAC ¶ 14.)

"In May 2012, Ms. Orebaugh confirmed receipt of all documents necessary for the [loan modification] application," "but [Plaintiff] never received a written determination of his

3

eligibility for the modification." (Id. ¶¶ 29-30.)

"[I]n August 2012, Plaintiff. . . learn[ed] that his account had been frozen." (SAC ¶ 15.) Plaintiff contacted Nationstar, "but. . . was unable to reach anyone to remedy the issue." (Id.) "On or about March 5, 2013, Defendant NATIONSTAR caused to be recorded a Notice of Default for Plaintiff's loan account." (Id. ¶ 17; RJN Ex. D, ECF No. 58-4.) "Defendant NATIONSTAR [then] caused to be recorded a Notice of Trustee's Sale for Plaintiff's property, . . . indicat[ing] that Plaintiff's property would be sold at auction . . . on June 26, 2013." (SAC ¶ 20; RJN Ex. E, ECF No. 58-5.)

After Nationstar obtained his mortgage, "Plaintiff received a letter from NATIONSTAR which indicated his Single Point of Contact had changed to Chance Davis" "[o]n or about May 8, 2013," another letter "indicated his Single Point of Contact had changed to Ryan Revalski" "[o]n or about May 10, 2013," and a third letter "indicated that Plaintiff's Single Point of Contact had . . . [changed] to Christopher Anderson" "[o]n or about June 10, 2013." (SAC ¶¶ 18-19, 21.) "[A]ll of Plaintiff's single points of contact failed to communicate" with Plaintiff" and "as a result of Defendant's" actions, "Plaintiff has suffered . . . irreparable harm. . . from the imminent loss of his property." (Id. ¶¶ 29, 31.)

### III. LEGAL STANDARD

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant

4

> is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citation and quotation omitted).

> The Supreme Court states "[t]wo working principles underlie" its motion to dismiss standard. Id.

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice....Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown that the pleader is entitled to relief.

Id. at 679.

### IV.   DISCUSSION

**A.   Claim 1: Cal. Civ. Code § 2923.6 and § 2923.7**

Nationstar argues Plaintiff's claim for damages under Cal. Civ. Code § 2923.6 and §2923.7 should be dismissed since "Plaintiff fails to allege a trustee's deed has recorded" and "a borrower cannot recover damages" without a recorded trustee's deed. (Nationstar Mot. 4:5-6; 4:23-24, ECF No. 57.) However, Nationstar has not shown that Plaintiff seeks damages in these

5

claims. Plaintiff alleges in his Complaint that he seeks "an injunction of the foreclosure sale, as well as attorney's fees," resulting from Nationstar's alleged violation of Cal. Civ. Code § 2923.6 and § 2923.7. (SAC ¶ 31.)

Cal. Civ. Code § 2924.12 (a)(1) prescribes: "If a trustee's deed upon sale has not been recorded, a borrower may bring an action for injunctive relief to enjoin a violation of Section . . . 2923.6 [or] 2923.7." Section 2924(i) permits the court to "award a prevailing borrower reasonable attorney's fees and costs in an action brought pursuant to this section," and provides "a borrower shall be deemed to have prevailed. . . if the borrower obtained injunctive relief or was awarded damages pursuant to this section."

Therefore, the motion is denied.

**B.    Claim 2: Good Faith and Fair Dealing**

**1.    Nationstar: Failure to Accept Partial Payment**

Nationstar argues Plaintiff's implied covenant claim fails since he "does not allege he attempted to cure his default or tender his obligations in full," (Nationstar Reply 3:18-19, ECF No. 64,) and a lender "may . . . reject[]" partial payments. (Nationstar Mot. 5:13-15.)

Plaintiff alleges he "had been attempting to make his mortgage payments . . . but had been frustrated in [] doing [this] because his account was frozen." (SAC ¶ 16.) Plaintiff's allegations are sufficient to withstand the dismissal motion. Therefore, the motion is denied.

///

///

6

1          **2.   BANA**

2               **a.   Allegations of Breach**

3          BANA seeks dismissal of Plaintiff's claim for breach of the implied covenant of good faith and fair dealing arguing Plaintiff fails to identify any way in which BANA unfairly interfered with his right to receive the benefits of the contract because "the provision which Plaintiff [] references [as being the term relevant to the implied covenant claim] is an [express] obligation upon <u>Plaintiff</u> to 'pay [] the principal of, and interest on, the debt evidenced by the Note.'" (BANA Mot. 6:3-6) (emphasis added).

          Plaintiff responds he has stated a claim since "[i]t naturally flows from Plaintiff's obligation to make monthly payments that Defendant must not unfairly interfere with the ability of Plaintiff to make such payments." (Opp'n to BANA Mot. 5:9-11; 6:23-25, ECF No. 60.)

          "It has long been recognized in California that . . . [under the implied covenant of good faith] neither party will do anything which will injure the right of the other to receive the benefits of the agreement." <u>Kransco v. Am. Empire Surplus Lines Ins. Co.</u>, 23 Cal. 4th 390, 400 (2000) (quoting <u>Comunale v. Traders & Gen. Ins. Co.</u>, 50 Cal.2d 654, 658 (1958)). "A 'breach of a specific provision of the contract is not a necessary prerequisite' to a breach of an implied covenant of good faith and fair dealing." <u>Marsu, B.V., v. Walt Disney Co.</u>, 185 F.3d 932, 937 (9th Cir. 1999) (quoting <u>Carma Dev. Inc. v. Marathon Dev. Cal., Inc.</u>, 2 Cal. 4th 342, 376 (1992)).

          Here, Plaintiff alleges in the FAC that BANA "induced

Plaintiff to stop making payments on his mortgage loan, and then unreasonably strung out the loan modification process while late fees accrued." (SAC ¶ 36.) BANA's inducement of Plaintiff's breach is what Plaintiff alleges violated the covenant. Plaintiff's allegations are sufficient to defeat the motion; therefore, this portion of BANA's motion is denied.

BANA also argues for the first time in its reply that Plaintiff fails to state a claim because BANA "merely respond[ed] to Plaintiff's request for information" and did not provide "an instruction to Plaintiff to stop making payments on his loan," (BANA Reply 3:18-21, ECF No. 62.) This untimely argument is not addressed here because it was not "rais[ed] in [BANA's] main brief". United States v. Cox, 7 F.3d 1458, 1463 (9th Cir. 1993).

### b.   Statute of Frauds

BANA also argues Plaintiff's implied covenant claim is insufficient since "Plaintiff cannot rely on purported oral representations to support any modification of a contract required to be in writing by the statute of frauds" and Plaintiff does not plead the contract modification was in writing. (BANA Mot. 6:9-11.)

An "agreement by a purchaser of real property to pay an indebtedness secured by a mortgage or deed of trust" is invalid unless reduced to a writing, Cal. Civ. Code § 1624(a)(6), and agreements to "forbear from exercising the right of foreclosure under a deed of trust securing an interest in real property" generally fall within the statute of frauds. Secrest v. Sec. Nat'l Mortg. Loan Trust 2002-2, 167 Cal. App. 4th 544, 547 (2008).

However, the California Supreme Court has held that "if there exists sufficient consideration for an oral modification agreement, then full performance by the promisee alone would suffice to render the agreement 'executed' within the meaning of section 1698." Raedeke v. Gibralter Sav. & Loan Ass'n, 10 Cal.3d 665, 673 (1974); see also Cal. Civ. Code §§ 1698 (b)-(c) ("a contract in writing may be modified by an oral agreement to the extent that the oral agreement is executed" and "unless the contract expressly provides, a contract in writing may be modified by an oral agreement supported by new consideration."). Consideration includes "any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor." Cal. Civ. Code § 1605. The plaintiffs in Raedeke established consideration "through the expenditure of time and energy" performing a task that "was not originally part of the bargain between plaintiff" and the defendant. 10 Cal.3d at 673.

Here, Plaintiff alleges "[BANA] informed [him] . . . in order to obtain a [loan] modification it was absolutely necessary for [him] to stop making payments on his loan[,]" and "that he would not face foreclosure or other negative consequences for missing payments in pursuit of a loan modification." (SAC ¶ 12.) After he "began missing payments" "in reliance on [BANA's] representations," "Plaintiff submitted yet another loan modification application to [BANA] . . ." (Id. ¶¶ 12-13.) Submitting a subsequent loan modification application after ceasing to make payments required the expenditure of time and energy that was not originally part of the loan agreement between

Plaintiff and BANA, and has not been shown to be insufficient activity to establish new consideration. See Wilson v. Household Fin. Corp., CIV S-12-1413 KJM AC, 2013 WL 1310589, *2 (E.D. Cal. Mar. 28, 2013) (filling out and submitting loan modification paperwork constituted new consideration); Vissuet v. Indymac Mortg. Serv., No. 09-cv-2321-IEG (CAB), 2010 WL 1031013, at *4 (S.D. Cal. Mar. 19, 2010) ("adequate consideration can be found in the form of Plaintiff's completion and submission of the loan modification application"). Therefore, this portion of BANA's motion is denied.

        c.    **"Series of Misrepresentations"**

BANA contends "Plaintiff's claims regarding a purported 'series of misrepresentations' are insufficiently pled" since the claims are "conclusory . . . [and] fall woefully short of pleading the requisite specificity to state a viable claim." (BANA Mot. 6:19-26.) BANA cites in support of this argument two California state court opinions. (BANA Mot. 6:19-26) (citing Lazar v. Superior Court, 12 Cal.4th 631 (1996); Tarmann v. State Farm Mut. Aut. Ins. Co., 2 Cal. App. 4th 153, 157 (1991)).

In an action pending in federal court, "[t]he Federal Rules of Civil Procedure apply . . . irrespective of whether the substantive law at issue is state or federal." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1102 (9th Cir. 2003). BANA's reliance on state court cases does not satisfy its burden of showing that the SAC fails to comply with the federal pleading standard. Therefore, this portion of the motion is denied.

        d.    **Plaintiff's Contractual Obligations**

BANA further argues "Plaintiff fails to establish he

10

fulfilled his obligations under the contract," which is an element of Plaintiff's implied covenant of good faith and fair dealing claim. (BANA Mot. 7:3.)

To establish a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must show he "did all, or substantially all of the significant things that the contract required him to do <u>or that he was excused from having to do those things</u>." Judicial Council of California Civil Jury Instructions § 325 (emphasis added). "The want of performance of an obligation. . . is excused . . . [w]hen the debtor is induced not to make it, by any act of the creditor intended or naturally tending to have that effect, done at or before the time at which such performance or offer may be made, and not rescinded before that time." Cal. Civ. Code § 1511(3).

Here, Plaintiff alleges BANA "induced [him] into skipping payments" (SAC ¶ 2); that he made payments to BANA until BANA "informed Plaintiff that in order to obtain a modification it was absolutely necessary for Plaintiff to stop making payments on his loan" and "that he would not face foreclosure or other negative consequences for missing payments;" and "Plaintiff substantially performed under the loan agreements, paying his monthly payments on time and in full every month." (SAC ¶¶ 37-38.) Plaintiff's allegations are sufficient to allege excuse of performance, which is an alternative to alleging substantial performance under the contract. Cal. Civ. Code §1511. Therefore, this portion of BANA's motion is denied.

### e. Insufficient Damages

BANA also argues Plaintiff fails to state a claim for

breach of the covenant of good faith and fair dealing because Plaintiff's damages allegations contradict what he alleged in a prior complaint. However, even assuming the correctness of BANA's argument, BANA has not shown that consistency is required. Therefore, this portion of BANA's motion is denied.

**C.   Claim 3: UCL**

    **1.   Nationstar**

        **a.   Standing**

Nationstar seeks dismissal of Plaintiff's UCL claim against it arguing Plaintiff lacks standing to bring a UCL claim "based on Civil Code Section 2923.7" since "Plaintiff simply alleges harm to his credit," which "is missing the second required element for standing, a causal connection." (Nationstar Mot. 6:10-12.)

To establish standing to prosecute a UCL claim, Plaintiff must show he "suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204; Birdsong v. Apple, Inc., 590 F.3d 955, 959 (9th Cir. 2009). "[D]amage to credit is a 'loss of money or property' within the meaning of the UCL." Rubio v. Capital One Bank, 613 F.3d 1195, 1204 (9th Cir. 2010)

Here, Plaintiff alleges he suffered "the destruction of his credit" "as a result of Defendants' wrongful conduct," and that he "has suffered, and will continue to suffer, substantial and irreparable injury from the imminent loss of his Property as a result of Defendant's violations of California Civil Code § 2923, et seq." (SAC ¶¶ 31, 50.) However, the SAC does not contain allegations from which a reasonable inference could be drawn that

these harms were the result of Nationstar's alleged violation of Cal. Civ. Code § 2923.7. As addressed in the Order issued June 27, 2014, "[t]hese conclusory allegations do not plausibly show that Nationstar caused Plaintiff to suffer an economic injury, and therefore Plaintiff has not shown that he has standing to bring UCL claims against Nationstar predicated on violations of section[] 2923." (Order Granting in Part and Denying in Part Nationstar's Motion to Dismiss FAC 11:15-20, ECF No. 53.) Accordingly, Nationstar's motion is granted.

### b.   "Unfair"

Nationstar also seeks dismissal of Plaintiff's UCL "unfairness" claims to the extent they are based on a violation of the implied covenant of good faith and fair dealing. (Nationstar Mot. 7:17-8:15.)

"The UCL does not define the term 'unfair'" and "the proper definition of 'unfair' conduct against consumers is 'currently in flux' among California courts." Davis v. HSBC Bank Nevada, N.A., 691 F.3d 1152, 1169 (9th Cir. 2012); see also Pernell v. BAC Home Loans Servicing, LP, No. 2:09-cv-03561 FDC, 2011 WL 318539, at *8 (E.D. Cal. Feb. 1, 2011) (discussing the opposing lines of cases). One approach referred to as the "balancing test" defines "unfair" by "examin[ing] the practice's impact on the alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer." Davis, 691 F.3d at 1169. Another approach, which the California Supreme Court has only applied in the context of UCL claims brought by competitors requires a plaintiff to "tether[]" "any finding of unfairness" "to some legislative declared policy." Id. at 1170

1  (citing Cel-Tech Commc'n, Inc. v. Los Angeles Cellular Tel. Co.,
2  20 Cal.4th 163, 186 (1999).).
3              In Davis, the Ninth Circuit discussed the two
4  approaches when considering a dismissal motion, but did not
5  decide which approach to apply since "[Plaintiff] fail[ed] to
6  state a claim under either definition." 691 F.3d at 1170.
7              Here too, the appropriate approach to apply need
8  not be determined since Plaintiff's allegations fail under
9  either. Therefore, this portion of the motion is granted.

####        c.    "Unlawful"

11      Nationstar seeks dismissal of Plaintiff's UCL
12 "unlawful" claim predicated on "Nationstar['s] alleged[]
13 violat[ion of] Civil Code section 2923.7 and "Plaintiff's UCL
14 claim predicated on his claim for purported breach of the implied
15 covenant of good faith and fair dealing." (Nationstar Mot. 7:4-
16 11.) Plaintiff contends his "UCL allegation under the unlawful
17 prong is tethered to his claims alleged under Civil Code 2924(a)
18 and 2923.6, and to his Civil Code 2923.7 or breach of [t]he
19 implied covenant of good faith and fair dealing" claims (Opp'n to
20 Nationstar Mot. 8:1-3); see also (SAC ¶ 49.) Therefore, this
21 portion of the motion is denied.

###     2.   **BANA**

####         a.   **Standing**

24      BANA argues Plaintiff lacks standing to pursue his UCL
25 "unfairness" claim since he "alleges that he 'suffered various
26 injuries. . . including but not limited to destruction of his
27 credit," but "fails to allege any specific amount of economic
28 damages sustained as a result of each Defendant's individual

conduct." (BANA Mot. 8:7-9.)

As discussed above, Plaintiff sufficiently alleged damages. Therefore, this portion of the motion is denied.

### b.   "Unfair"

BANA contends Plaintiff's allegations "are insufficient to maintain a UCL ["unfairness"] claim as they fail to set forth conduct that 'violates public policy or [are not] 'tethered to specific constitutional, statutory, or regulatory provisions.'" (BANA Mot. 9:9-11.) Plaintiff responds that his "UCL claim is tethered to Defendant's violations of California law as set forth in the [SAC]." (Opp'n to BANA Mot. 8:11-12.)

However, the portions of the Complaint Plaintiff references are claims alleged exclusively against Nationstar. (SAC ¶¶ 48-49.) Therefore, BANA's motion is granted.

### c.   "Unlawful"

BANA argues Plaintiff's UCL "unlawful" claim is not supported by a factual allegation from which it could reasonably be inferred that BANA committed unlawful or fraudulent conduct. (BANA Mot. 9:11-13.)

Plaintiff has not alleged a factual allegation evincing that this is a plausible claim against BANA.  Therefore, this portion of BANA's dismissal motion is granted.

### d.   "Fraud"

BANA argues Plaintiff's UCL claim should be dismissed under a California pleading standard since "Plaintiff fails to plead any facts showing how any of the alleged conduct involving his private loan, or any of the alleged conduct would deceive the public at large" as required for "a UCL claim founded on fraud."

1 | (BANA Mot. 9:18-19 (citing In re Tobacco II Cases, 46 Cal. 4th
2 | 298, 312 (2009).)
3 | The standard cited by BANA does not apply here because
4 | it relates to UCL claims "based on false advertising or
5 | promotional practices," which are not alleged in the SAC. In re
6 | Tobacco II Cases, 46 Cal. 4th at 312. BANA's claim is therefore
7 | denied.

## V. CONCLUSION

For the stated reasons, Nationstar's motion is granted in part and denied in part and Bank of America's motion is granted in part and denied in part.

Both Nationstar and BANA move for dismissal with prejudice. (Nationstar Mot. 9:2-10; BANA Mot. 2:21-23.) When deciding whether dismissal should be with prejudice, "[t]he court should freely give leave [to amend a pleading] when justice so requires." Rule 12(a)(2). "[T]his policy is to be applied with extreme liberality," Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990), and considers "factors such as bad faith, undue delay, prejudice to the opposing party, and the futility of amendment." Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 339 (9th Cir. 1996). Since neither movant has shown that any dismissal should be with prejudice, Plaintiff is granted ten (10) days from the date on which this order is filed to file a Third Amended Complaint addressing the deficiencies in any claim Plaintiff was previously granted leave to include in the SAC.

Dated: October 28, 2014

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge