UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARTHEL DENNIS BORING, an individual,<br><br>        Plaintiff,<br><br>  v.<br><br>NATIONSTAR MORTGAGE, LLC, a limited liability company,[1]<br><br>        Defendant. | No. 2:13-CV-1404-GEB-CMK<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Defendant Nationstar Mortgage, LLC ("Nationstar") seeks summary judgment, or alternatively, partial summary judgment on each claim in Plaintiff's Third Amended Complaint ("TAC"). Plaintiff's TAC consists of five claims alleged under California law: three claims are under the California Civil Code, a claim under the California Unfair Competition Law ("UCL") and a claim that Nationstar breached the implied covenant of good faith and fair dealing.

### I. LEGAL STANDARD

> A party is entitled to summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the

---

[1] This caption has been amended based on Plaintiff's Stipulation of Voluntary Dismissal filed August 12, 2015. (ECF No. 86.)

1

> movant is entitled to summary judgment as a matter of law." . . . The moving party has the burden of establishing the absence of a genuine dispute of material fact.

City of Pomona v. SQM N. Am. Corp., 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case." Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A "dispute about a material fact is 'genuine,' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. Summary judgment "evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in favor of that party." Sec. & Exch. Comm'n v. Todd, 642 F.3d 1207, 1215 (9th Cir. 2011) (citing Johnson v. Paradise Valley Unified Sch. Dist., 251 F.3d 1222, 1227 (9th Cir. 2001)).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or . . . showing that the materials do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

> However, if the nonmovant does not "specifically . . . [controvert duly supported] facts identified in the [movant's] statement of undisputed facts," the nonmovant "is deemed to have admitted the validity of the facts contained in the [movant's] statement." Beard v. Banks, 548 U.S. 521, 527

2

(2006). A district court has "no independent duty 'to scour the record in search of a genuine issue of triable fact.'" Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010) (quoting Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996)).

## II. Objections

### A. Plaintiff's Objections

Plaintiff objects to certain evidence Nationstar presents in support of its motion. Plaintiff objects under Federal Rule of Evidence 1002 to paragraphs 8-13, 15-18, and 20 of the Declaration of Fay Janati. Federal Rule of Evidence 1002 prescribes, "[a]n original writing . . . is required in order to prove its content unless these rules or a federal statute provides otherwise." Janati avers in her declaration that she is a Litigation Resolution Analyst for Nationstar and that her knowledge of the information contained in her declaration is "based upon [her review of] the business records pertaining to the . . . case." (Janati Decl. ¶ 1, ECF No. 75-3.)

Nationstar responds that Federal Rule of Evidence 1006 permits consideration of the referenced paragraphs since Janati's averments are a summary of multiple documents and Rule 1006 states "[t]he proponent [of documentary evidence] may use a summary . . . to prove the content of voluminous writings . . . that cannot be conveniently examined in court." However, Nationstar has not shown the documents Janati avers to have summarized are so voluminous they cannot be conveniently examined in court.

///

3

Plaintiff's objections to paragraphs 8-9 are sustained, except as to the portions of the paragraphs Plaintiff admits are "undisputed" in his response to Defendant's Statement of Undisputed Facts. (Pl. Resp. Def. Statement Undisputed Facts ("SUF") ¶¶ 6-7, ECF No. 77-2.) Plaintiff's objection to paragraphs 11-12 and 15 are sustained. Plaintiff's objections to paragraphs 10 and 13 are overruled since Plaintiff admits in his response to Defendant's Statement of Undisputed Facts that the referenced portions of the Janati declaration are "undisputed." (SUF ¶¶ 9, 11.) Plaintiff's objections to paragraphs 16-18 and 20 are overruled because the referenced portions of the declaration do not disclose the content of a writing. See United States v. Bennett, 363 F.3d 947, 953 (9th Cir. 2004) (holding the best evidence rule applies when secondary evidence is offered to prove the content of a writing).

**B.   Nationstar's Objections**

Nationstar also objects to certain of Plaintiff's evidence. Nationstar objects to Plaintiff's Exhibits 3, and 5-11 attached to the Boring Declaration and to Exhibits 18-23 attached to the Cho Declaration submitted in support of Plaintiff's opposition to Nationstar's motion. Nationstar argues the referenced exhibits were not disclosed in discovery as required by Federal Rule of Civil Procedure ("Rule") 26 and therefore under Rule 37 cannot be used in support of Plaintiff's opposition.[2]

---

[2] Nationstar also argues the referenced exhibits should be disregarded since they do not support a claim in Plaintiff's TAC. However, Nationstar fails to adequately show that the referenced exhibits are irrelevant to the claims in Plaintiff's TAC. Therefore, its objection is overruled.

4

1 |         Plaintiff responds that any failure to provide the
2 | referenced documents in discovery was harmless since the
3 | documents are correspondence between Plaintiff and Nationstar
4 | employees and therefore would be in Nationstar's possession even
5 | if not disclosed by Plaintiff.
6 |         Nationstar replies that Plaintiff assumes Nationstar
7 | keeps such communications indefinitely, but does not assert such
8 | an assumption is incorrect or that Nationstar lacked copies of
9 | the relevant communications.
10 |        Rule 26(a) and (e) state discovery disclosure
11 | requirements and "Rule 37(c)(1) provides that a party failing to
12 | provide information required by Rule 26(a) or (e) 'is not allowed
13 | to use that information . . . to supply evidence on a motion...
14 | unless the failure was substantially justified or is harmless.'"
15 | Hoffman v. Constr. Protective Servs., Inc., 541 F.3d 1175, 1179
16 | (9th Cir. 2008) (first alteration in original) (citing Rule
17 | 37(c)(1)).
18 |        Exhibits 3 and 5-11 attached to the Boring declaration
19 | are letters and e-mail correspondence between Plaintiff and
20 | Nationstar employees. Exhibit 18 attached to the Cho declaration
21 | is a proof of service demonstrating when Exhibits 9-11 were
22 | provided to Nationstar and Exhibits 9-11 are e-mail
23 | correspondence between Plaintiff and Nationstar employees.
24 | Therefore, Plaintiff has shown its failure to provide the
25 | referenced exhibits to Nationstar prior to the discovery
26 | completion date was harmless since Nationstar was a party to each
27 | correspondence. Nationstar's objection is overruled.
28 | ///

### III. UNCONTROVERTED FACTS

The following facts concerning the motion are either admitted or "deemed" uncontroverted since they have not been controverted with specific facts as required by Local Rule 260(b), which prescribes:

> Any party opposing a motion for summary judgment . . . [must] reproduce the itemized facts in the [moving party's] Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any... document relied upon in support of that denial.

Plaintiff obtained a loan from Countrywide Bank, FSB, secured by real property ("the Property") in October 2007. (SUF ¶ 1.) The loan was transferred to Nationstar on or about November 15, 2011. (SUF ¶¶ 2-5.) At the time of the transfer, Plaintiff was past due on three payments. (SUF ¶ 6.) Plaintiff submitted an application to Nationstar for a loan modification in January 2012 and provided additional documents supporting his application in May 2012. (SUF ¶ 11.) Nationstar assigned Foreclosure Prevention Specialist Amber Orebaugh as a Single Point of Contact ("SPOC") for Plaintiff's loan modification application; in a letter dated May 8, 2013, Nationstar notified Plaintiff his SPOC had been changed to Chanc Davis; in a letter dated May 10, 2013, Nationstar notified Plaintiff his SPOC has been changed to Ryan Revalski; and in a letter dated June 20, 2013 Nationstar notified Plainitff his SPOC had been changed to Christopher Anderson. (SUF ¶¶ 30-33.)

The parties dispute whether Nationstar ever issued a decision regarding Plaintiff's May 2012 loan modification

application, but it is uncontroverted that in a letter dated May 22, 2012, Nationstar offered Plaintiff a Home Affordable Unemployment Forbearance Agreement ("the Forbearance Agreement"). (SUF ¶ 12.) The Forbearance Agreement required Plaintiff to make deferral periodic payments on or before July 1, 2012; August 1, 2012; and September 1, 2012. (SUF ¶¶ 14, 17.) Nationstar received deferral payments from Plaintiff in July and August 2012, but has no records of Plaintiff making a September payment. (SUF ¶¶ 18, 20.) Nationstar issued a demand letter on October 10, 2012 stating Plaintiff was in default on his loan. (SUF ¶ 23.) The October 10, 2012 letter also notified Plaintiff his overdue payments were to be made by "certified funds, cashier's check or money order." (SUF ¶ 24.)

A Notice of Default was recorded on March 5, 2013 and a Notice of Sale was recorded on May 31, 2013, setting a sale date of June 26, 2013. (SUF ¶¶ 27-29.)

### IV. DISCUSSION

**A.  California Civil Code Section 2924(a)**

Nationstar seeks summary judgment on Plaintiff's claim alleging it "violated [section 2924(a)] when it recorded a Notice of . . . Sale [for the Property] less than three months after the recording of the Notice of Default for [the Property]," (TAC ¶ 27), arguing that the Notice of Sale was recorded more than 85 days after the Notice of Default, and the sale date was 113 days after the Notice of Default in accordance with section 2924(a)(4). (Not. Mot. & Mot. Summ. J. ("Mot.") 5:17-21, ECF No. 75.) Nationstar cites in support of its position the uncontroverted facts establishing that the Notice of Default was

recorded on March 5, 2013; the Notice of Sale was recorded on May 31, 2013; and the Notice of Sale set a sale date for June 26, 2013. (SUF ¶¶ 26-28.)

Plaintiff does not respond to this argument.

California Civil Code section 2924(a)(2) states a trustee must wait at least 90 days after recording a Notice of Default before recording a Notice of Sale. However, section 2924(a)(4) states the Notice of Sale may be made "up to five days before the lapse of the [90-day] period described in paragraph (2), provided that the date of sale is no earlier than [110 days] after the recording of the notice of default."

Since the uncontroverted facts establish the Notice of Sale was recorded 87 days after the Notice of Default and the date of sale was set for 113 days after the Notice of Default, this portion of Nationstar's motion is granted.

**B.   California Civil Code Section 2923.6**

Nationstar seeks summary judgment on Plaintiff's claim that it recorded the Notice of Default and Notice of Sale while Plaintiff's May 2012 loan modification application was still pending, in violation of California Civil Code section 2923.6. (TAC ¶ 30.) Nationstar argues Plaintiff's May 2012 loan modification application was not pending when the notices were recorded. Nationstar also argues it denied Plaintiff's loan modification application in a letter dated May 22, 2012 when it offered Plaintiff the Forbearance Agreement in lieu of a loan modification. (Mot. 7:24-26.) The May 22 letter contains two documents; the first states "[t]hank you for your inquiry regarding the Home Affordable Unemployment Program (UP) which

8

1  grants borrowers a forbearance plan during which regular monthly
2  mortgage payments are reduced or suspended[;]" "Nationstar . . .
3  will review your eligibility and contact you if more information
4  is needed to qualify for participation in the UP." (Janati Decl.
5  Ex. E, ECF No. 75-3.). The second document states:

> We have received your request for the Making Home Affordable Modification Program. Please find enclosed the following documents that must be completed in full and returned to Nationstar Mortgage in order for us to fully evaluate your request. In order to be considered for this program, these documents must be returned (sic) 06/21/2012. During the evaluation period, your home will not be referred to foreclosure or be sold at a foreclosure sale if the foreclosure process has already been initiated.

(Janati Decl. Ex. E.) Nationstar also argues an undated e-mail from Amber Orebaugh to Plaintiff supports its position. The e-mail responds to Plaintiff's June 4, 2012 inquiry asking why Nationstar sent him a request for additional paperwork regarding his loan modification application, and states:

> You are probably receiving the [application] packet because you have qualified for the unemployment program and have been set up on it. Once you have a job, you can apply for a permanent modification so hang on to that packet until you have a job and can apply. In the mean time please give me a call so I can go over the unemployment program with you.

(Ladi Decl. Ex. A ("Boring Dep. Tr.") Ex. 12, ECF No. 75-2.)

Plaintiff contends Nationstar did not provide him a written determination that his May 2012 loan modification application was denied and argues "contrary to [Nationstar's position] that [it] offered the Forbearance Agreement in lieu of a permanent loan modification, . . . the [May 22, 2012] letter

specifically contemplates a contemporaneous review for a loan modification during a portion of the forbearance period." (Opp'n 1:9-10.) Plaintiff cites as support for his position the May 22, 2012 letter from Nationstar, which states in pertinent part: "[d]uring the Deferral Period [in the Forbearance Agreement], [Plaintiff] will be evaluated for the Home Affordable Modification Program." (Boring Decl. Ex. 3, ECF No. 77-5.)

California Civil Code section 2923.6 states in part:

> [i]f a borrower submits a complete application for a loan modification . . . a mortgage servicer . . . [or] trustee . . . shall not record a notice of default or a notice of sale . . . while the complete first lien loan modification application is pending. A mortgage servicer [or] trustee ... shall not record a notice of default or notice of sale or conduct a trustee's sale until any of the following occurs: (1) the mortgage services make a written determination that the borrower is not eligible for a first lien loan modification . . . (2) the borrower does not accept an offered first lien loan modification within 14 days of the offer [or] (3) the borrower accepts a written first lien loan modification, but defaults on, or otherwise breaches the borrower's obligations under, the first lien loan modification.

Plaintiff declares he submitted "a complete application for a loan modification" to Nationstar in May 2012. (Boring Decl. ¶ 9.) Therefore, the May 22, 2012 letter demonstrates that a genuine issue of fact exists concerning whether his application was pending when the Notice of Default and Notice of Sale were recorded in 2013. Therefore, Nationstar's motion is denied.

**C.   California Civil Code Section 2923.7**

Nationstar seeks summary judgment on Plaintiff's claim alleging it violated California Civil Code section 2923.7(b) by

10

assigning his loan modification application to more than one SPOC, and because each SPOC failed to timely communicate with him. (TAC ¶¶ 28-29.)

### 1.   More Than One SPOC

Nationstar argues it did not violate section 2923.7 by changing Plaintiff's SPOC since "[t]here is nothing in section 2923.7 that precludes a SPOC from changing over the course of time." (Mot. 6:11-12.)

Plaintiff responds that his section 2923.7 claim "is not based on the theory that the [SPOC] changed over time." (Pl. Opp'n Def. Mot. Summ. J. ("Opp'n") 10:10-21, ECF No. 77.) No controversy exists concerning this claim since the does not exist.

### 2.   Failure To Communicate

Nationstar argues Plaintiff's claim that it violated section 2923.7 by failing to timely communicate with him about his May 2012 loan modification application fails since "Plaintiff made only minimal attempts to contact [the SPOCs who were responsible for his account after Amber Orebaugh]" and therefore "cannot affirmatively state that these [SPOCs] failed to provide him any information." (Mot. 7:5-6; 7:11-13.) Nationstar supports its position citing a portion of position Plaintiff's deposition testimony, in which he testifies that he "tried to contact Chanc Davis" by phone but "never got ahold of [him]," and did not remember if he attempted to leave a message; that he "tr[ied] to contact Mr. Anderson," by phone but "did not" "get ahold of [him]," and did not "leave him a message" since Plaintiff "couldn't get anywhere with anybody else," and did not know

11

"[w]hy [Anderson] would be any different"; and did not recall if he ever tried to call Mr. Revalski or if he ever left a message for him. (Boring Dep. Tr. 100:12-105:21.)

Plaintiff responds that his SPOCs "failed altogether to communicate with [him] regarding his loan modification application," (Opp'n 10:21-23), citing his declaration in which he avers "each time [he] attempted to reach [his SPOC, he] was informed that they were in a meeting, out to lunch, or off for the day," and that he "requested [his] SPOC to contact [him], however, [he] never received a response." (Boring Decl. ¶ 18.)

California Civil Code section 2923.7(a) states that "[u]pon request from a borrower who requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a ["SPOC"] and provide to the borrower one or more means of communication with that [SPOC]." Section 2923.7(b)(4). Section 2923.7(b) states in pertinent part that responsibilities of an SPOC include, <u>inter alia</u>, "[h]aving access to current information and personnel sufficient to timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative."

The uncontroverted facts establish Orebaugh served as Plaintiff's initial SPOC, and that the SPOC role was subsequently reassigned to Chanc Davis on May 8, 2013; to Ryan Revalski on May 10, 2013; and to Christopher Anderson on June 10, 2013. (SUF ¶¶ 30-33.) Plaintiff has presented evidence from which a reasonable inference can be drawn that these individuals were not available to speak with him and did not return his phone calls during the time they were assigned as his SPOC. Therefore, Nationstar's

motion on this issue is denied.

**D.    UCL**

Nationstar seeks summary judgment on Plaintiff's UCL claim alleging its conduct "constitutes unlawful business practices" because Nationstar's "violation of Civil Code 2924(a) and 2923.6 constitutes unlawful conduct under [the UCL]." (TAC ¶¶ 45-46.) Since Nationstar's summary judgment motion on the section 2924(a) claim was granted, Nationstar's motion concerning the UCL claim predicated on a violation of section 2924(a) is also granted. Nationstar further argues Plaintiff's UCL claim predicated on section 2923.6 fails since a UCL claim requires a showing of damage, and the damages Plaintiff claims to have suffered "arose from [his] own conduct" since "he did not make all of the required payments that were due" on his loan. (Mot. 11:3-6.) Nationstar cites in support of its position the undisputed facts that when Plaintiff's loan was transferred to Nationstar in 2011, Plaintiff was behind on three mortgage loan payments. (SUF ¶ 6.)

Plaintiff responds that as a result of Nationstar's violation of section 2923.6 he "suffered accumulation of foreclosure fees and the imminent loss of his [P]roperty[,] and had to incur attorneys' fees and costs in bringing the instant lawsuit." (Opp'n 14:25-27.)

To succeed on a UCL claim, Plaintiff must "h[ave] suffered injury in fact and h[ave] lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204.

There are innumerable ways in which economic

13

| | |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |

>           injury from unfair competition may be shown.
>           A plaintiff may (1) surrender in a
>           transaction more, or acquire in a transaction
>           less, than he or she otherwise would have;
>           (2) have a present or future property
>           interest diminished; (3) be deprived of money
>           or property to which he or she has a
>           cognizable claim; or (4) be required to enter
>           into a transaction, costing money or
>           property, that would otherwise have been
>           unnecessary.

Kwikset Corp. v. Superior Court, 51 Cal.4th 310, 323 (2011).

Plaintiff's section 2923.6 claim alleges Nationstar acted unlawfully "when it recorded the Notice of Default on March 5, 2013 and the subsequent Notice of Trustee Sale on May 31, 2013" since Plaintiff's May 2012 loan modification application was still under review. (TAC ¶ 30.) However, there is no genuine issue of material fact concerning whether Plaintiff "lost money or property" as a result of Nationstar's actions since Plaintiff was behind in his loan payments at the time the Notice of Default and Notice of Sale were recorded. Therefore, Nationstar's motion is granted.

**E.  Breach of the Implied Covenant of Good Faith and Fair Dealing**

Nationstar seeks summary judgment on Plaintiff's implied covenant of good faith and fair dealing claim alleging it breached the covenant "in or around August 2012" by "fr[eezing] Plaintiff's account and prevent[ing] him from making his monthly mortgage payments [online as he had previously done]." (TAC ¶ 41.) Nationstar argues "the reason that Plaintiff could not make payments online . . . was because Nationstar issued a demand letter dated October 10, 2012 that required Plaintiff to make his past due payments in certified funds, cashier's check, or money

14

1  order mailed to Nationstar;" Nationstar cites <u>Little v. Pullman</u>,
2  219 Cal. App. 4th 558, 567 (2013), for the proposition that "a
3  creditor who does not wish to be paid in [a particular] manner
4  may refuse to accept the tender on the ground that it does not
5  constitute a lawful offer of money." (Mot. 9:3-5.) Nationstar
6  supports its position citing a certified letter sent to Plaintiff
7  dated October 10, 2012, which states: "Nationstar Mortgage LLC
8  requests that all payments be made in certified funds, cashier's
9  check or money order(s) payable to and mailed to Nationstar
10 Mortgage, LLC." (Janati Decl. Ex. G, ECF No. 75-3.) Nationstar
11 also argues Plaintiff did not suffer any damages from the account
12 freeze because his "damages arose from [his] own conduct when he
13 previously did not make all of the required [loan] payments that
14 were due." (Mot. 9:4-7; 10:4; 10:6-8.)

15         Plaintiff responds Nationstar's October 10 letter
16 cannot justify his account freeze since Nationstar froze his
17 account <u>prior to sending the letter</u>, citing as support for his
18 position a portion of his declaration, in which he avers "[i]n or
19 around <u>August or September 2012</u>, [he] attempted to make . . .
20 online payments [toward his loan] . . . but was met with a screen
21 indicating that [his] account was blocked. [He] immediately
22 contacted [his] customer service manager, Ms. Orebaugh, but [he]
23 was unable to reach her." (Boring Decl. ¶ 11, ECF No. 77-5.)
24 Plaintiff also argues he suffered damages from the account freeze
25 because Nationstar assessed late fees to his account, citing
26 Nationstar's "Payment History Transaction Report," which shows a
27 $40.48 late fee assessed to Plaintiff's account. (Cho Decl. Ex.
28 15, ECF No. 77-2.)

Plaintiff's evidence that Nationstar froze his account prior to providing notice that it was changing its policy and would no longer accept online payments, and Plaintiff's evidence that he was assessed late fees when he could not pay his mortgage because his account was frozen, creates disputed facts preventing summary judgment. See Mardikian v. Citimortgage, Inc., No. 1:14-cv-0407-LJO-SKO, 2014 WL 3615253, at *5 (E.D. Cal. July 21, 2014) (considering late fees as a adequately alleged damages); Johnson v. Aurora Bank, FSB, No. 14-cv-5424-JSC, 2015 WL 1306466, at *9 (N.D. Cal. Mar. 23, 2015) (same).

Therefore, Nationstar's motion is denied.

**V.     CONCLUSION**

For the stated reasons, Nationstar's motion is GRANTED in part and DENIED in part.

Dated: August 14, 2015

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge